MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ATTORNEYS FOR YAHOO! INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE INC., YAHOO! INC., IAC SEARCH & MEDIA, INC., AOL LLC, and LYCOS, INC.<br><br>　　　　　Defendants. | Case No.　Misc. Action C-09-80004-RMW[1]<br><br>(Case No. 2:07-cv-511 (CE) pending in the Eastern District of Texas)<br><br>**YAHOO!'S RESPONSE TO SOFTWARE RIGHTS ARCHIVE LLC'S AND DANIEL EGGER'S POST-HEARING BRIEF RE: YAHOO!'S MOTIONS TO COMPEL COMPLIANCE WITH SUBPOENAS ON WSGR AND MURRAY** |

---

[1] Consolidated for hearing with *Google v. Egger*, Case No. 5:08-03172-RMW.

YAHOO!'S RESPONSE TO SRA'S AND EGGER'S POST-HEARING BRIEF
Case Nos. Misc. Action C-09-80004 & C-08-03172-RMW
sf-2676766

## I. SRA'S NEW ARGUMENT TO BLOCK DISCOVERY FROM MURRAY AND WSGR IS WAIVED, INCORRECT, AND PREMATURE.

Recognizing that it was not justified in trying to block *all* discovery from WSGR and Murray, SRA raised a new argument for the first time at the April 17, 2009 hearing.[2] Specifically, SRA's counsel claimed that SRA might be entitled to assert the privilege over at least *some* of the patent-related documents sought by Yahoo!'s subpoenas, as Egger or SRA allegedly inherited the privilege over these documents from Site Tech. To justify its new argument, SRA has submitted a belated five-page "Post-Hearing Brief."[3]

Like SRA's earlier argument that Site Tech's privilege survived its bankruptcy, SRA's latest justification for blocking Yahoo!'s discovery fails for several reasons. First, SRA waived its new "passage of the privilege" argument by failing to raise it in its 40+ pages of opposition briefing to Yahoo!'s motions. Second, because SRA and Egger have not continued to operate any aspect of Site Tech's business, they did not inherit Site Tech's privilege over its patent-related files. Finally, because SRA's counsel claimed at oral argument not to know whether such patent-related files even exist (despite reviewing WSGR's documents) and has not provided a privilege log, SRA's request that this Court determine that it is entitled to assert the privilege for any such files is not ripe.

### 1. SRA Waived Its New "Passage of the Privilege" Argument.

Before the April 17th hearing, SRA never once alleged that it was asserting the privilege on Egger's or SRA's behalf, rather than on Site Tech's behalf. Indeed, SRA's new "passage of the privilege" argument appeared nowhere in its objections to Yahoo!'s subpoenas on WSGR and

---

[2] This brief applies the same abbreviations used in Yahoo!'s Reply Brief in Support of Its Motions to Compel WSGR and Murray, filed April 3, 2009 [Docket No. 95, Case No. C-08-03172-RMW] ("Yahoo!'s Reply Brief").

[3] SRA's Post-Hearing Brief Concerning Privileged Patent Files, filed April 23, 2009 [Docket No. 101, Case No. C-08-03172-RMW] at 2.

YAHOO!'S RESPONSE TO SRA'S AND EGGER'S POST-HEARING BRIEF
Case Nos. Misc. Action C-09-80004 & C-08-03172-RMW
sf-2676766

1

Murray.[4] It also appeared nowhere in SRA's 40+ pages of briefing in opposition to Yahoo!'s two motions to compel.[5]

WSGR's and Murray's oppositions confirm that SRA's counsel's prior assertions of the privilege were on *Site Tech's* behalf, not *SRA's*. In its brief, WSGR explained that it had been "advised by counsel for Site Technologies that Site Technologies is still in existence under California state law and is asserting the attorney client privilege."[6] WSGR never mentioned Egger's or SRA's independent assertions of the privilege. The same was true of Murray's opposition.[7]

Having failed to raise its new "passage of the privilege" argument before the April 17th hearing in any setting, SRA has waived the argument. SRA's general objections to Yahoo!'s subpoenas were insufficient to preserve the issue,[8] and it is well-established that a non-moving party like SRA waives an argument by failing to raise it in opposition to a motion.[9]

Recognizing the very belated (and waived) nature of its new argument, SRA stretches to find this argument in its opposition briefing. For example, in a footnote, SRA points to another footnote in its opposition brief that it suggests preserved this argument.[10] The footnote from

---

[4] Ho Decl. (WSGR) Ex. C (only generally objecting to the requests "to the extent" that they sought to "invade the attorney-client privilege and/or work product doctrine"); Ho Decl. (Murray) Ex. C (same).

[5] *See* SRA Opp'n (WSGR); SRA Opp'n (Murray).

[6] WSGR Opp'n at 4.

[7] Murray Opp'n.

[8] *See Heffelfinger v. Elec. Data Sys. Corp.*, 580 F. Supp. 2d 933, 966 n.116 (C.D. Cal. 2008) ("[P]laintiffs belatedly assert that the court should have inferred a dispute on this issue from their general evidentiary objections. The mere filing of those objections, though, did not put . . . the court on notice of the basis on which plaintiffs disputed the underlying fact.").

[9] *See, e.g., id.* ("[P]laintiff's failure to contest the issue in their opposition . . . effected a waiver of any contrary claim they may have had."); *In re Monster Worldwide, Inc.*, 251 F.R.D. 137 (S.D.N.Y. 2008) ("[T]his argument was raised for the first time at oral argument and so was waived in terms of this motion."); *Wood v. Hall*, 130 F.3d 373, 377 (9th Cir. 1997) (explaining that "[a]rguments raised for the first time at oral argument are generally waived").

[10] *See* SRA Post-Hearing Br. at 2.

YAHOO!'S RESPONSE TO SRA'S AND EGGER'S POST-HEARING BRIEF
Case Nos. Misc. Action C-09-80004 & C-08-03172-RMW
sf-2676766

2

SRA's opposition brief stated only that "the requested files may also contain patent files that should have been turned over to Daniel Egger in connection with the 1998 Bill of Sale," however; it nowhere mentioned Egger's and SRA's independent assertions of the privilege.[11] Indeed, far from asserting a privilege in their own right, SRA and Egger identified having to "review and analyze all discovery products" as their sole "*interest in the outcome*" of Yahoo!'s motions.[12]

SRA also suggests that the Court invited its belated briefing by "inquir[ing] whether privileges accompanying the patent files transferred to Daniel Egger along with ownership of those files."[13] But the Court did no such thing. At the end of oral argument, recognizing that SRA had not briefed this new argument, SRA's counsel *offered* to submit briefing on this issue. SRA thus waived any argument that any privilege passed to Egger with the patents.

### 2. The Privilege Did Not Pass to Egger or SRA.

Even if SRA had not waived this argument, Site Tech's privileges over its patent files could not have passed to Egger or SRA. SRA acknowledges the black-letter rule that the "mere transfer of [patent] assets [does] not transfer the privilege."[14] Multiple cases acknowledge this rule, including the Federal Circuit's opinion in *Telectronics Proprietary Ltd. v. Medtronic, Inc.*[15]

To attempt to circumvent this rule, SRA alleges that Site Tech's privilege as to its patent-related files passed to Egger because he "purchased more than mere physical assets or a single

---

[11] *See* SRA's Opp'n (WSGR) at 4 n.4; SRA Opp'n (Murray) at 4 n.4.

[12] *See* SRA's Opp'n (WSGR) at 1 n.2 (emphasis added); SRA Opp'n (Murray) at 1 n.2.

[13] SRA's Post-Hearing Br. at 2.

[14] SRA's Post-Hearing Br. at 2.

[15] 836 F.2d 1332, 1336-37 (Fed. Cir. 1988) ("The district court correctly found that Medtronic was never a client of either [counsel] because the assignment of a patent does not transfer an attorney-client relationship."); *accord In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 90 (5th Cir. 1976) ("Assignment of the patent does not assign [counsel] Mr. Irons along with it. The relationship between an attorney and his client is personal. . . . In the absence of this relationship, the duties of loyalty and confidentiality do not arise."); *Cardiogrip Corp. v. Mueller & Smith, L.P.A.*, Case No. 2:06-CV-996, 2008 U.S. Dist. LEXIS 2627, at *14-15 n.2 (S.D. Ohio Jan. 14, 2008) ("[T]he assignment of a patent does not assign the attorney-client relationship along with it."); *NL Industries, Inc. v. Koomey, Inc.*, 647 F. Supp. 936 (S.D. Tex. 1984) ("[T]ransfer and assignment of the patent does not also transfer the attorney/client privilege.").

YAHOO!'S RESPONSE TO SRA'S AND EGGER'S POST-HEARING BRIEF
Case Nos. Misc. Action C-09-80004 & C-08-03172-RMW
sf-2676766

3

patent."[16] In support, SRA cites three cases allegedly holding that the privilege "transfer[s] where the result of the transaction is a transfer of control of the business embodying the patent."[17]

None of these cases detracts from the Federal Circuit's holding in *Telectronics*. Instead, they *confirm* that Egger did not inherit the privilege when he allegedly obtained the patents and other assets from Site Tech via the 1998 Bill of Sale. Each of these cases turned on the fact that the party that acquired the patents acted as the assignor's corporate successor-in-interest.

For example, in *Soverain Software LLC v. The Gap, Inc.*, the privilege transferred because the assignee "not only acquired certain assets[,] but also has continued to operate the Transact business."[18] Likewise, in *Coffin v. Bowater, Inc.*, the purchaser obtained "the right to represent itself as [the seller's] successor" and "virtually all control and continuation of [the] business," including the business' name, lists of suppliers, and customer referral lists.[19] Finally, in *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, the privilege passed to a corporation that "acquired the entire division responsible for developing and marketing [the patented] [s]ystem."[20] The acquisition in *Parus* "was not limited to obtaining rights to the System, but also included taking on employees and managers from the division."[21]

Here, SRA does not (and cannot) allege that SRA or Egger ever continued to operate Site Tech's business as to the patents. There is no evidence that Egger continued any business relating to any technology referenced in the 1998 Bill of Sale. It was not until 2004, on the day after

---

[16] SRA's Post-Hearing Br. at 2.

[17] *See id.* at 2-4 (citing *Soverain Software LLC v. The Gap, Inc.*, 340 F. Supp. 2d 760 (E.D. Tex. 2004), *Coffin v. Bowater Inc.*, Case No. 03-227-P-C, 2005 U.S. Dist. LEXIS 9395 at *8 (D. Me. May 13, 2005), and *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1003 (N.D. Ill. 2008)).

[18] 340 F. Supp. 2d at 763 (citing declaration of Soverain's President that "Soverain sells, as its principal business, the Transact product, retains the patents covering that product, and services customers with contracts to that product").

[19] 2005 U.S. Dist. LEXIS 9395 at *8.

[20] 585 F. Supp. 2d at 1003.

[21] *Id.*

YAHOO!'S RESPONSE TO SRA'S AND EGGER'S POST-HEARING BRIEF
Case Nos. Misc. Action C-09-80004 & C-08-03172-RMW
sf-2676766

4

Site's bankruptcy was complete, and more than five years after the 1998 Bill of Sale, that Egger set up another company, SRA, Inc. There is also no evidence that Egger transferred "non-patent assets" allegedly mentioned in the 1998 Bill of Sale to SRA, Inc. at any time. Egger testified that he was the sole owner and sole employee of SRA, Inc., SRA's predecessor company. According to Egger, SRA, Inc. had minimal revenues, no product sales, and no physical facilities.[22] As for SRA, it has admitted that it has done nothing with the patents besides initiate this litigation. SRA's Texas "office" is nothing more than an empty, unmarked, and unused front.[23]

Thus, the "practical consequence" of the patents' alleged transfer to Egger and SRA was not "the transfer and control of [Site Tech's] business and the continuation of the business under new management."[24] Egger received the patents and related assets, and nothing more.[25] Accordingly, there is no reason to deviate from the "bright-line rule" that "mere transfer of some assets or a single patent . . . does not transfer the attorney-client privilege."[26]

### 3. SRA's New Privilege Argument Is Not Ripe For Resolution in SRA's Favor.

Finally, even if SRA had not waived its new privilege argument, it would not be ripe for resolution in SRA's favor. SRA, which bears the burden of demonstrating that the privilege applies, has not produced a privilege log identifying the documents purportedly protected by any extant privilege. Indeed, at oral argument (and despite its review of WSGR's files), SRA's

---

[22] *See* Declaration of Richard S.J. Hung in Support of Yahoo!'s Response to SRA's and Egger's Post-Hearing Brief, dated April 28, 2009 ("Hung Decl.") Exh. A (Egger Depo. (Oct. 2, 2008)) at 15:10-21, 16:6-24.

[23] *See* Hung Decl. Exh. B (Collins Decl.) at ¶¶ 2-5. Mr. Collins, a licensed private investigator, went to SRA's alleged office during normal business hours, and found no signs that SRA was located or doing business there. *Id.* at ¶¶ 2-3. Indeed, the Suite where SRA was supposedly located was vacant and contained only bare office furniture that appeared to be unused. *Id.* at ¶¶ 4-5.

[24] *Soverain*, 340 F. Supp. 2d at 763-64.

[25] Yahoo!, of course, does not agree or concede that Egger ever received title to the patents. Yahoo! simply notes that, even if one assumes that Egger somehow obtained title to the patents from Site Tech (which he did not), neither he nor SRA can properly assert that they inherited the privilege over any patent-related documents.

[26] *Soverain*, 340 F. Supp. 2d at 763-64.

YAHOO!'S RESPONSE TO SRA'S AND EGGER'S POST-HEARING BRIEF
Case Nos. Misc. Action C-09-80004 & C-08-03172-RMW
sf-2676766

5

counsel could not even say if such documents existed. In its Post-Hearing Brief, SRA reiterated that it "do[es] not know whether the lawyers' files contain such patent files."[27]

Absent the identification of such documents on a privilege log, SRA's new privilege claim is not ripe for resolution in SRA's favor. If the Court is inclined to find that Egger or SRA can still assert the privilege as to the patent-related files in WSGR's or Murray's possession, Yahoo! asks that the Court defer such a ruling until the documents have been identified on a privilege log.

## II. JUDGE EVERINGHAM'S RULING ON STANDING IS NOT FINAL.

At the April 17th hearing, the Court asked whether Magistrate Judge Everingham's March 31, 2009 ruling on Defendants' motion to dismiss was final. Yahoo! and Google's attorneys explained that the ruling was not final and could be challenged. SRA's attorney, by contrast, argued that the ruling was final and settled.

The question of whether SRA owns the patents and has standing to sue certainly is *not* settled, as SRA erroneously argued. It is well-established that a district court may reconsider and reverse an interlocutory order (such as the denial of a motion to dismiss) at any time before final judgment.[28] Thus, Magistrate Judge Everingham may reverse his determination that SRA owns the patents and has standing to bring suit at any time and for any reason that Magistrate Judge Everingham deems sufficient.

The non-final nature of Judge Everingham's ruling is particularly clear because the ruling concerned subject matter jurisdiction. Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, a court must dismiss an action if it "determines *at any time* that it lacks subject-matter

---

[27] *See* SRA's Post-Hearing Brief at 2 n.1.

[28] *See, e.g., Louisiana v. Guidry*, 489 F.3d 692, 698 n.14 (5th Cir. 2007) ("A trial court is free to reconsider and reverse its decision on an interlocutory order 'for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law . . . .'") (citation omitted); *Hardey v. Newpark Res., Inc.*, No. 07-9025, 2008 WL 732715, at *1 (E.D. La. March 18, 2008) ("[T]he Court's denial of defendants' motion to dismiss . . . is an interlocutory order that 'is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'") (citing Fed. R. Civ. P. 54(b)).

YAHOO!'S RESPONSE TO SRA'S AND EGGER'S POST-HEARING BRIEF
Case Nos. Misc. Action C-09-80004 & C-08-03172-RMW
sf-2676766

6

jurisdiction."[29] A court has both the power and the obligation to reverse its own interlocutory decisions on subject matter jurisdiction if it decides that such jurisdiction is later lacking.[30]

Accordingly, Defendants may renew their argument that SRA lacks patent ownership and standing at a later point in the Texas litigation and also may move the Eastern District of Texas Court to reconsider its ruling.[31] On its part, the Eastern District of Texas court must revisit its standing and ownership determinations *sua sponte* if it later believes that its ruling was incorrect.

Dated: April 29, 2009   MORRISON & FOERSTER LLP

By: _____ */s/* Richard S.J. Hung _____
Richard S.J. Hung
Attorneys for Defendant Yahoo! Inc.

---

[29] (Emphasis added.)

[30] *See, e.g., Ohio Cell. Prods. Corp. v. Adams U.S.A., Inc.*, No. 94-7251, 2000 WL 33743107, at *8 n.2 (N.D. Ohio Nov. 9, 2000) (denying motion to dismiss for lack of subject matter jurisdiction, while noting that "[o]f course, this Court is free to reconsider this determination *sua sponte* at any time in the litigation, should new facts be brought to its attention"); *see also Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 621 (2d Cir. 1993) (finding it "unexceptional" that a party renewed a subject matter jurisdiction challenge after a decade of litigation, "because jurisdiction may be raised at any time.").

[31] As Defendants noted at the April 17, 2009 hearing, documents in WSGR's and Murray's files may provide further support for a motion for reconsideration.

YAHOO!'S RESPONSE TO SRA'S AND EGGER'S POST-HEARING BRIEF
Case Nos. Misc. Action C-09-80004 & C-08-03172-RMW
sf-2676766

7